UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

BUILDERS BANK, an Illinois State
Chartered Bank,

                Plaintiff,        <u>MEMORANDUM AND ORDER</u>

       - against -         CV 2008-3575 (MDG)

ROCKAWAY EQUITIES, LLC, <u>et</u> <u>al.</u>,

                Defendants.

- - - - - - - - - - - - - - - - - - X


      Plaintiff Builders Bank brings this action against

defendants Rockaway Equities, LLC ("Rockaway"), B and D

Development, Inc., Beachway Properties, LLC, Fairway Equities,

LLC, Yaron Hershco ("Hershco"), Able Equipment Rental, Inc.,

Feldman Lumber Industries, Inc., Miron Building Supply, LLC,

Mastro Concrete, Inc. and S&J Sheet Metal, LLC (collectively

"defendants")[1] to foreclose two mortgages upon several parcels of

real property located at 1482 and 1496-1522 Prospect Place,

Brooklyn, New York (the "Premises").  In December 2008, plaintiff

moved for default judgment against defendants.  <u>See</u> ct. doc. 22.

In August 2009, plaintiff filed the instant motion for an interim

order permitting it to take possession of the Premises, receive

rents generated from the Premises and for an award of attorneys'

fees.  <u>See</u> ct. doc. 34.  On September 28, 2009, the Honorable

Kiyo A. Matsumoto denied without prejudice plaintiff's motion for

_____

     [1] Plaintiff subsequently discontinued the action against
Northern Funding, Union Square Capital, Northern Source and
Capitalsource Finance.

default judgment for failure to serve the Amended Complaint on
defendants Rockaway, B&D, Beachway, Fairway and Herscho.  <u>See</u> ct.
doc. 35.  In October 2009, plaintiff re-filed the instant motion
for default judgment against the defendants.  <u>See</u> ct. doc. 37.
On September 2, 2010, the parties consented to have the case re-
assigned to me for all purposes.  <u>See</u> ct. doc. 50.

<u>BACKGROUND</u>

The facts described below are undisputed unless otherwise
noted.

On April 9, 2007, plaintiff made a loan to defendant
Rockaway in the amount of $2.5 million to acquire the Premises.
Amended Complaint ("Am. Compl.") at ¶ 22.  This loan was
memorialized by a Standing Loan Note and secured by a Standing
Loan First Mortgage Security Agreement and Fixture Filing which
was recorded in the office of the City Register, Kings County on
September 18, 2007 under document number CRFN 2007000478783.  <u>See</u>
<u>id.</u> at ¶ 23; ct. doc. 5-3 ("Standing Loan Note"); ct. doc. 32-1
("Standing Loan First Mortgage Security Agreement and Fixture
Filing").  In addition, plaintiff made a building loan to
defendant Rockaway in the amount of $4 million to partially
finance the acquisition, development and construction of twelve
three-family homes located on the Premises.  <u>See</u> Am. Compl. at
¶¶ 24-26.  This loan was evidenced by a Building Loan Note and
secured by a Consolidated Building Loan Mortgage, Security
Agreement and Fixture Filing which was recorded in the Register's

Office on September 18, 2007 under document number CRFN 20070004787787. <u>Id.</u> at ¶¶ 26-27; ct. doc. 5-4 ("Restated Building Loan Note").

The loan documents provide that interest is due and payable on the fifth day of each month starting on May 5, 2007 at the higher of 8% or one percent plus the Prime Rate. The total indebtedness becomes due and payable after an event of default at the election of the plaintiff. An event of default is defined as the failure to pay any installment of principal or interest payable pursuant to the note when due or any other amount payable under the Notes. The loan documents further provide that from the maturity date of April 5, 2008, or after an event of default, interest would accrue at the rate of 24% per year. Interest is calculated on an actual day/360 day basis. If the borrower fails to pay interest or principal due within 5 days after such payment is due, then the borrower is liable for a late charge of 5 cents on every dollar due, as well as all costs, including reasonable attorneys' fees and costs of collection.

Defendant Herscho personally guaranteed payment under the loan documents pursuant to the Guaranty Agreement dated April 4, 2007. <u>See</u> Am. Compl. at ¶ 53; ct. doc. 5-5 ("Guaranty Agreement").

The Standing Loan First Mortgage Security Agreement and Fixture Filing contains several provisions potentially relevant to the motion for interim relief as follows. Paragraph 9 provides:

Lease Assignment.  Borrower acknowledges that, as
additional security for the repayment of the Loan,
Borrower has assigned to Lender interests in the leases
of the Premises and the rents and income from the
Premises.  Upon the occurrence of a default under this
Mortgage which has not been cured within any applicable
grace or cure period, Lender shall be entitled to
exercise any or all of the remedies provided in this
Mortgage including without limitation, the appointment
of a receiver, without notice to Borrower and without
regard to the value of the Premises.  This assignment
shall continue in full force and effect during any
period of foreclosure or redemption with respect to the
Premises.

Paragraph 17 provides:

Foreclosure; Expense of Litigation.
     a.  When all or part of the Indebtedness shall
become due, whether by acceleration or otherwise,
Lender shall have the right to foreclose the lien
hereof for such Indebtedness or part thereof and/or
exercise any right, power or remedy provided in this
Mortgage or any of the other Loan Documents in
accordance with applicable law.

Paragraph 19 provides:

Appointment of Receiver.  Upon or at any time after the
filing of a complaint to foreclose this Mortgage, the
court in which such complaint is filed shall, upon
petition by Lender, appoint a receiver for the
Premises, without notice to Borrower and without regard
to the value of the Premises.  Such appointment may be
made either before or after sale, without notice,
without regard to the solvency or insolvency of
Borrower at the time of application for such receiver
and without regard to the value of the Premises or
whether the same shall be then occupied as a homestead
or not and Lender hereunder or any other holder of the
Note may be appointed as such receiver.  Such receiver
shall have power to collect the rents, issues and
profits of the Premises (I) during the pendency of such
foreclosure suit, (ii) in case of a sale and a
deficiency, during the full statutory period of
redemption, whether there be redemption or not, and
(iii) during any further times when Borrower, but for
the intervention of such receiver, would be entitled to
collect such rents, issues and profits.

Paragraph 20 provides:

> Lender's Right of Possession in Case of Default. At
> any time after an Event of Default has occurred,
> Borrower shall, upon demand of Lender, surrender to
> Lender possession of the Premises. Lender, in its
> discretion, may, with process of law, enter upon and
> take and maintain possession of all or part of the
> Premises, . . . . Lender shall have full power to use
> such measures, legal or equitable, as in its discretion
> may be deemed proper or necessary to enforce the
> payment or security of the avails, rents, issues, and
> profits of the Premises, including actions for the
> recovery of rent, actions in forcible detainer and
> actions in distress for rent. Without limiting the
> generality of the foregoing, Lender shall have full
> power to: . . .
> f. receive all of such avails, rents, issues and
> profits.

Ct. doc. 31-2.

Defendants Rockaway and Yaron Hershco defaulted on the Notes by failing to pay them on their maturity date of April 5, 2008. Am. Comp. at ¶ 37. As a result, plaintiff declared the principal due under the loan documents which has not been paid. Plaintiff also discovered the defendants had obtained secondary financing on the Premises in violation of the mortgages held by plaintiff.

On September 3, 2008, Plaintiff commenced this action against the defendants and the secondary lenders to foreclose the two mortgages. Plaintiffs filed an Amended Complaint on September 30, 2008. In 2008, four of the residential building lots were sold with the proceeds of those sales applied to the building loan mortgage. Pursuant to a Stipulation of Settlement and Order dated October 27, 2008 which settled claims against the secondary lenders, the proceeds from the sale of a fifth lot were applied to the building loan mortgage in accordance with the terms set forth in the Stipulation.

The Clerk of the Court noted the default of the defendants in this action on April 10, 2009 and October 27, 2009.  On May 12, 2009, the defendants appeared through counsel to contest the amount of damages claimed.  See ct. doc. 26.  In October 2009, plaintiff re-filed a motion for default judgment seeking to recover the outstanding amounts on the two mortgages, totaling $2,930,414.80, plus attorney's fees and costs.  See ct. doc. 37. The defendants concede that there is no underlying defense to the foreclosure of the two mortgages.

During the pendency of this action, plaintiff learned that the defendants are renting three of the properties subject to the security agreements.  Affidavit of Mark Luetkehans at ¶¶ 4, 11 (ct. doc. 40).  Plaintiff changed the locks to these units, gave the tenants keys and directed the tenants to pay rent to plaintiff instead of defendants.  Id. at ¶ 7.  In response, the defendants changed the locks, gave new keys to the tenants and continues to collect the rent.  Id. at ¶¶ 10, 13.  Plaintiff alleges that it demanded that defendants tender all rents collected to date and inform the tenants to pay rent to plaintiff, but defendants have refused.  Ct. doc. 34 at ¶ 12.

Defendants contend that there was no "formal written demand" as required by the mortgages.  Affidavit of Yaron Hershco at ¶ 6 (ct. doc. 41).  Moreover, the defendants deny that nine units have been rented.  Id. at ¶ 6  (ct. doc. 41).  Rather, the defendants claim that three tenants pay rent in the amount of $4,950 monthly.  Id.  The defendants use this rent to offset the

monthly cost of maintenance of the property, including the vacant
units, in the amount of $5,000.  Id.

Plaintiff seeks an order requiring defendants to surrender
the Premises to plaintiff, to inform the tenants to pay rent to
plaintiff instead of defendants and to turnover all rents
previously collected.  Plaintiff further seeks to recover the
outstanding amounts on the two mortgages on the Premises and its
attorneys' fees and costs and to foreclose the two mortgages.

On May 14, 2010, I held oral argument on the pending motions
and directed the plaintiff to supplement its submissions on the
motion for default judgment since it had not offered evidence
sufficient to determine the amounts currently due under the
mortgages, including the amounts of any payments received, how
those payments were credited and the calculation of interest.  In
addition, I required a further explanation of the legal work that
was required on the satellite litigation against the secondary
mortgagees and its connection to the action for foreclosure.  I
further ordered plaintiff to supplement its submissions on the
motion for interim relief since it had not submitted any evidence
based on personal knowledge.  After reviewing the supplemental
submissions, on July 2, 2010, this Court held a further
conference and directed the plaintiff to supplement its
submissions to provide interest calculations, to explain the
claimed increased in the principal on the Standing Loan Note and
the method by which the plaintiff credited payments received from
the defendants.  On September 1, 2010, a third conference was

held.  At the conference, plaintiff waived its claim to
$41,170.95 it had previously claimed as increased principal due
on the Standing Loan Note and I directed the plaintiff to address
whether there was an overlap in its request for attorneys' fees
and expenses with a separate category of damages and to submit
billing records for any fees claimed for work completed after
March 2009.  <u>See</u> minute entry dated 9/1/10.

DISCUSSION

I.   <u>Motion for Default Judgment</u>

     A.   <u>Legal Standards Governing Default</u>

     A default constitutes an admission of all well-pleaded
factual allegations in the complaint, except for those relating
to damages.  <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty
Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Au Bon Pain Corp. v.
Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981).  A default also
effectively constitutes an admission that damages were
proximately caused by the defaulting party's conduct; that is,
the acts pleaded in a complaint violated the laws upon which a
claim is based and caused injuries as alleged.  <u>Greyhound</u>, 973
F.2d at 159.  The movant need prove "only that the compensation
sought relate to the damages that naturally flow from the
injuries pleaded."  <u>Id.</u>

     The court must ensure that there is a reasonable basis for
the damages specified in a default judgment.  Actual damages or
statutory damages may be assessed.  In determining damages not

susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines, Inc. v. Hughes, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

B.  Determination of Default Damages

Plaintiff is entitled to foreclosure if it alleges "the existence of an obligation secured by a mortgage, and a default on that obligation." United States v. Fugle, No. 00-CV-0540, 2003 WL 251948, at *2 (W.D.N.Y. Jan. 25, 2003); RTC v. J.I. Sopher & Co., No. 94 Civ. 7189, 1995 WL 489697, at *2 (S.D.N.Y. Aug. 15, 1995); United States v. Freidus, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991). If those elements are established, the mortgagee has a "presumptive right to collect." Fugle, 2003 WL 251948, at *2; RTC, 1995 WL 489697, at *2; Freidus, 769 F. Supp. at 1277. Thus, any determination of default damages should be determined under the terms of the Notes and Mortgages, the governing instruments here.

Since plaintiff also seeks entry of a default judgment against defendant Yaron Hershco, the extent of default damages that may be assessed against him must be determined in accordance

with the terms of the guaranty he signed.  Chase Manhattan Bank, N.A. v. American Nat. Bank and Trust Co. of Chicago, 93 F.3d 1064, 1073-1074 (2d Cir. 1996) ("Under New York law, guarantee agreements must be strictly construed according to their terms"). If a guaranty is unconditional and does not limit in any way the obligations of the guarantor, the guarantor's liability will be equal to that of the principal debtor.  European American Bank v. Lofrese, 182 A.D.2d 67, 73, 74, 586 N.Y.S.2d 816, 819, 820 (2d Dep't 1992).

The guarantee that Mr. Hershco signed is unconditional, providing, inter alia, that:

> 1.  Guaranty of Payment.  Each Guarantor hereby unconditionally and irrevocably guaranties to Lender, jointly and severally, the punctual payment and performance when due, whether at stated maturity or by acceleration or otherwise, of the indebtedness and other obligations of Borrower to Lender evidenced by the Note and any other amounts that may become owing by Borrower under the Loan Documents (such indebtedness, obligations and other amounts are hereinafter collectively, referred to as "Payment Obligations").  This Guaranty is a present and continuing guaranty of payment and not of collectibility, and Lender shall not be required to prosecute collection, enforcement or other remedies against Borrower or any other guarantor of the Payment Obligations, or to enforce or resort to any collateral for the repayment of the Payment Obligations or other rights or remedies pertaining thereto, before calling on Guarantor for payment.  If for any reason Borrower shall fail or be unable to pay, punctually and fully, any of the Payment Obligations, Guarantor shall pay such obligations to Lender in full immediately upon demand.

Guaranty Agreement at 1 (ct. doc. 5-5).  Thus, the full amount of any default judgment against Rockaway should also be assessed against Yaron Hershco.

1.  <u>Outstanding Principal</u>

    In support of its claim for damages, plaintiff has
established that defendants failed to pay the outstanding
principal on the Notes and Mortgages on or after the due date of
April 5, 2008.  Even prior to the Maturity Date, the defendants
were often late in paying interest, conduct which, under the
terms of the Note constitute events of default triggering
acceleration of the entire principal balance and all unpaid
interest without notice.  Although the defendants do not contest
the plaintiff's entitlement to foreclosure on the mortgages, the
defendants dispute the amount of principal owed to plaintiff.
According to the plaintiff, the principal outstanding on the two
loans is $2,503,640.70[2] while the defendants contend the
outstanding principal is $1,917,367.02.  After comparing and
extracting the data from the schedules submitted by plaintiff and
the Rockaway defendants, this Court finds that the discrepancy in
the amount of the outstanding principal calculated appears to
have resulted from the following:  (1) a $1,100.00 difference

---

[2] Originally, plaintiff claimed that the outstanding
principal on the Building Loan Note is $220,473.02.  <u>See</u> ct. doc.
37-2 at ¶ 15.  In a later submission, plaintiff claimed that the
outstanding principal on the Building Loan Note is $3,646.70.
<u>See</u> ct. doc. 42 at ¶ 7.

    Originally, plaintiff claimed that the outstanding principal
on the Standing Loan Note is $2.5 million.  <u>See</u> ct. doc. 37-2 at
¶ 14.  In a later submission, plaintiff claimed that the
outstanding principal on the Standing Loan Note is $2,541,170.95.
<u>See</u> ct. doc. 42 at ¶¶ 4-5.  However, at a conference before the
undersigned, plaintiff dropped its claim for any amount due on
the Standing Loan Note above the original $2.5 million loan.  <u>See</u>
minute entry dated September 1, 2010.

between the amount plaintiff claims that Rockaway borrowed under the Restated Building Loan Note, $2,879,355.52 as opposed to the $2,878,255.52 claimed by Rockaway; (2) a $150 difference between the $708,882.50 credit given by plaintiff for proceeds from the sale of 1500 Prospect, as opposed to $709,032.50 credited by Rockaway; (3) a $335,029.68 difference because plaintiff credited only $216,826.32 of the proceeds from the sale of 1498 Prospect, instead of the full sale proceeds of $551,856.00 as did Rockaway; and (4) $250,000 for a credit claimed by defendants from the proceeds of the sale of 1502 Prospect not credited by plaintiff.

This Court generally agrees with the plaintiff's calculations of the principal outstanding. There is no dispute that the original principal amount of Standing Loan Note was $2,500,000. With respect to the first discrepancy regarding the principal amount borrowed by defendants on the Restated Building Loan Note, I credit the higher amount claimed by plaintiffs. Plaintiff's schedule indicates that as of October 31, 2007, the outstanding principal on that note had reached $2,879,355.52. See ct. doc. 45, Exh. G. The amount claimed by defendants, $2,878,255.52, was the amount of outstanding principal as of September 19, 2007. Id. Plaintiff's schedule also indicates that the defendants had twice drawn similarly small amounts on that note on September 5, 2007 and September 18, 2007 and all the subsequent interest accrued clearly were calculated based on the higher principal. Id. Since plaintiff had not yet declared a default on the note at that time, the defendants presumably

-12-

received monthly statements and had the opportunity to challenge the principal amount claimed by plaintiff and interest statements.

Second, this Court could not find any information in the record presented that would explain the $150 discrepancy in the amount credited for the proceeds from the sale of 1500 Prospect. Since this amount is de minimis and could be explained by an additional deduction for closing costs, I take plaintiff's lower amount for the payment.

With respect to the third and fourth items, plaintiff's treatment of the proceeds of sale from the two properties is essentially in accordance with the stipulation of settlement (the "Stipulation") entered into as of October 27, 2008 by plaintiff, Rockaway, Herschco and certain other defendants in this action governing the sale of certain parcels secured by the mortgages herein and disposition of proceeds. See ct. doc. 42, Exh. A.

The Stipulation sets forth a formula for the application of the proceeds of the sale of the first four lots, which plaintiff generally applied correctly. Id. at ¶ 3. Specifically, paragraph 3 of the Stipulation provides that the proceeds of the sale would be applied, inter alia, to reduction of principal in the amount of $2,720,473.02, interest, including default interest, late charges and attorneys' fees. Id.

Although no submission clearly sets forth how sale proceeds were applied to reduce loan obligations and whether this followed requirements of the Stipulation, some information can be culled

from the schedule of calculations provided by plaintiff describing the amounts of outstanding principal and accrued interest as of certain dates and Rockaway's schedule of properties sold and amounts of payments it claimed should have been credited.  Combined, it appears that $1,300,000 of the proceeds from the sale of 1512 Prospect and 1510 Prospect was applied by plaintiff in reduction of the principal of the Restated Loan Note on March 10, 2008.  Forty days later, on April 28, 2008, plaintiff applied an additional $650,000 credit from the sale of 1508 Prospect and $708,882.50 of the proceeds from the sale of 1500 Prospect on June 10, 2008.  On November 19, 2008, plaintiff applied the part of the proceeds from the sale of 1498 Prospect of $215,826.32 to outstanding principal of the Restated Building Loan and the balance of the sale proceeds of $335,029.68 to interest payments on both loans, late charges and various fees and costs.  <u>See</u> ct. doc. 45, Exhs. C-2, F, G.  In arguing that plaintiff should have applied the entire $551,856.00 of the sale proceeds toward reduction of principal, Rockaway ignores the provisions of the Stipulation concerning how proceeds from the sale of certain lots will be distributed.  In fact, with the credit of $215,826.32 towards principal, the total amount of proceeds in payment of principal amounted to $2,875,858.82, more than required under the Stipulation.  More importantly, Section 3.2 of both the Standing Loan Note and the Restated Building Loan Note give the Lender the discretion to apply payments in such order as it determines after default.

As to the defendant's claim that it is entitled to a credit for a payment of $250,000, despite several opportunities to do so, the defendants have not submitted any evidence to support that claim.

Accordingly, I find that the outstanding principal due on the Building Loan is $3,646.70 and that the principal amount due on the Standing Loan is $2.5 million. In sum, the principal amount due to plaintiff under both Loans is $2,503,646.70.

2. <u>Interest</u>

The Notes provide that the default interest rate shall be "equal to twenty four percent (24%); provided, however, in no event shall the Default Rate exceed the maximum rate permitted by law." Plaintiff calculated interest at the rate provided in the note (the higher of 8% or 1% + prime) and at the default rate of 24% starting March 15, 2008. Defendant argues that a rate of 24% interest is usurious.

It is well settled that "the defense of usury does not apply where . . . the terms of the mortgage and note impose a rate of interest in excess of the statutory maximum only after default or maturity." <u>Miller Planning Corp. v. Wells</u>, 253 A.D.2d 859, 860, 678 N.Y.S.2d 340 (2d Dep't 1998). Furthermore, the loan in this matter was made to a corporate defendant and a corporation may raise the defense of usury only if the interest rate exceeds the criminal usury rate of 25%. N.Y. Gen. Oblig. L. § 5-521 (McKinney's 1989); <u>see also</u> <u>Aaron v. Mattikow</u>, 61 Fed. Appx. 764, 2003 WL 1973353 (2d Cir. 2003) (affirming a 24% interest rate for a corporation). Thus, the 24% default interest rate specified by

the Notes does not exceed what is permissible under applicable law.

Plaintiff's detailed calculation of interest through June 10, 2010 appears to be correct in the amount of $1,011,387.25.[3] Plaintiff is further entitled under the Notes to collect a late charge of 5% of the outstanding principal, which amounts to $125,182.34. The total amount is reduced by a cash collateral credit for cash that was on deposit with plaintiff at the time of default in the amount of $257,740.66.

Plaintiff further claims that $101,822.18 is due for "Reimbursable Expense[s]." See Supplemental Declaration of Richard Goldberg, Exh. C-1. However, this "reimbursable expense" includes $79,769.90 in attorneys' fees that have been separately requested by plaintiffs. Award of that amount would be duplicative of the attorney fee award discussed below and therefore will be excluded. Thus, plaintiff is entitled to $22,052.28 in expenses.

Accordingly, I grant judgment of foreclosure and sale and direct that the proceeds of the foreclosure sale be paid to plaintiffs for the sum of $3,404,527.91, plus accrued interest from June 10, 2010 on the principal in an amount to be determined by a Master to be appointed.

C. Attorneys' Fees

Plaintiff seeks attorneys' fees of $177,780.00 for the cost

_____

[3] Interest is calculated on the adjusted principal of $2,503,646.70.

of legal services rendered.  Plaintiff has applied $72,040.29
from the proceeds of the sale of 1498 Prospect Place leaving
$105,739.71 outstanding.  Under the terms of the Notes, plaintiff
is entitled to reasonable attorneys' fees and disbursements.

The standard method for determining the amount of reasonable
attorneys' fees is "the number of hours reasonably expended on
the litigation multiplied by a reasonable hourly rate," or a
"presumptively reasonable fee." Hensley v. Eckerhart, 461 U.S.
424, 433, 1940 (1983); Arbor Hill Concerned Citizens Neighborhood
Ass'n, 522 F.3d 182, 188-90 (2d Cir. 2008); Chambless v. Masters,
Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir.
1989); see also Perdue v. Kenny A., 130 S.Ct. 1662, 1672-73
(2010) (discussing lodestar methodology).  In reviewing a fee
application, the district court must examine the particular hours
expended by counsel with a view to the value of the work product
of the specific expenditures to the client's case.  See Lunday v.
City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v.
Morizio, 759 F.2d 231, 235 (2d Cir. 1985).  If any expenditure of
time was unreasonable, the court should exclude these hours from
the calculation.  See Hensley, 461 U.S. at 434; Lunday, 42 F.3d
at 133.  The court should thus exclude "excessive, redundant or
otherwise unnecessary hours, as well as hours dedicated to
severable unsuccessful claims." Quaratino v. Tiffany & Co., 166
F.3d 422, 425 (2d Cir. 1999).  A party seeking attorneys' fees
bears the burden of supporting its claim of hours expended by
accurate, detailed and contemporaneous time records.  New York

State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136,
1147-48 (2d Cir. 1983).

A reasonable hourly rate is "the rate a paying client would
be willing to pay," "bear[ing] in mind that a reasonable paying
client wishes to spend the minimum necessary to litigate the case
effectively." Arbor Hill, 522 F.3d at 190. The reasonable
hourly rates should be based on "rates prevailing in the
community for similar services of lawyers of reasonably
comparable skill, experience, and reputation." Cruz v. Local
Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing
Blum v. Stenson, 465 U.S. 886, 894 (1984)). Determination of the
prevailing market rates may be based on evidence presented or a
judge's own knowledge of hourly rates charged in the community.
Chambless, 885 F.2d at 1059. The "community" is generally
considered the district where the district court sits. See Arbor
Hill, 522 F.3d at 190.

The four attorneys who billed the majority of the time spent
on this case were two partners at a rate of $335 per hour and two
counsels at rates of $350-$360 per hour. The range in this
district is between $300 and $450 for partners, between $200 and
$300 for senior associates and between $100 and $200 for junior
associates. See Luca v. County of Nassau, 698 F. Supp. 2d 296,
301-05 (E.D.N.Y. 2010); Gutman v. Klein, No. 03 Civ. 1570, 2009
WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009). Based on my general
knowledge of prevailing rates in this district as well as rates
for this type of real estate matter, I find that these rates are

-18-

reasonable.

As to the number of hours claimed, defendants argue that a large amount of the time claimed by plaintiff is uncompensable because it involved time spent in plaintiff's action against other parties and for claims other than foreclosure. On the contrary, the Mortgages include broad provisions for attorneys' fees. Section 12 of the Mortgages provides that "reasonable attorney's fees" are recoverable "in connection with (a) sustaining the lien of this Mortgage or its priority, (b) protecting or enforcing any of Lender's rights hereunder, (c) recovering any Indebtedness, (d) any litigation or proceedings affecting the Note, this Mortgage, any of the other Loan Documents or the Premises . . . ." In addition, Section 17 provides that in a suit to foreclose the mortgages all expenditures and expenses for reasonable attorney's fees shall be allowed. See also sections 29, 39(b)(iv).

Although some of the time spent on this litigation involved other parties, the work was conducted because of Rockaway's and Hershco's violations of its obligations under the agreements. These other parties were second mortgage holders who were made parties to this action because they granted Rockaway and Hershco secondary financing in violation of the mortgages held by plaintiffs. Similarly, the claims alleged in plaintiff's complaint other than foreclosure pertained to plaintiff's efforts to protect its rights against the secondary mortgagees who were dismissed. The pursuit of those claims and the satellite

litigation that ensued were a direct result of defendant's violations of the agreements.

However, after reviewing the time records, I find that the hours billed are excessive for the work required on this case. A substantial amount of time claimed was spent by attorneys for duplicative work. Many of the billing entries describe telephone conferences and e-mail exchanges between attorneys for which multiple attorneys billed. For example, on August 8, 2008, Donald Schwartz, Richard Blumberg, Richard Grossman and Steven Gaebler each billed for conferences between them. On August 18, 2008, Andrew Curto, Donald Schwartz, Richard Blumberg and Russell Tisman each billed for conferences between them. The large number of attorney conferences also reflected the overstaffing on this case, which contributed to excessive billing. The August 2008 records contain billing entries for eleven different attorneys' time for this litigation.

Moreover, some of the work done by attorneys should have been completed by paralegals at lower rates. For example, on September 3, 2008, Mary Mongoi billed 2.5 hours for filing the summons and complaint, including her travel time at a rate of $350 per hour. On September 30, 2008, Lisa Perillo billed 1.8 hours for filing a summons at a rate of $250 per hour.

In addition, the hours claimed for specific tasks are excessive. For example, several attorneys billed approximately 93 hours for an application for an order to show cause seeking injunctive relief. Eleven attorneys billed approximately 90

hours before the complaint was even filed. Plaintiff also billed
approximately 27.9 hours for preparing the first motion for
default judgment which was denied by Judge Matsumoto.[4] Plaintiff
subsequently billed approximately 15 hours for the second motion
for default judgment which was substantially similar to the first
motion. After plaintiff submitted its second motion for default
judgment, this Court still had to request plaintiff to supplement
those papers three times to obtain the necessary information to
determine the amounts due under the Notes. Plaintiff's counsel
billed for each supplemental submission when the necessary
information should have been submitted originally. Finally,
plaintiff billed for its submissions in support of its various
applications for attorneys' fees which are not compensable. See
Savoie v. Merchants Bank, 166 F.3d 456, 461 (2d Cir. 1999).

       Thus, I find it appropriate to discount the time claimed.
Courts in this Circuit are permitted to reduce an excessive fee
request by making an across-the-board percentage for redundant or
otherwise unnecessary hours. See Kirsch v. Fleet Street, Ltd.,
148 F.3d 149, 173 (2d Cir. 1998) (court should "deduct a
reasonable percentage of the number of hours claimed as a
practical means of trimming fat from a fee application"); New
York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d
1136, 1146 (2d Cir. 1983) (since "it is unrealistic to expect a

_____

       [4] Although plaintiff excluded $3,036 from that month's bill,
this amount does not offset the time spent on the first motion
for default judgment.

trial judge to evaluate and rule on every entry in an application" courts may apply across the board percentage cuts); Am. Camping Ass'n v. Camp Shane, 06 Civ. 0716, 2006 WL 1982770, at *2-*4 (S.D.N.Y. June 16, 2006) (approving significant across-the-board reduction where matter was overstaffed); Sea Spray Holdings, Ltd., 277 F.Supp.2d at 326 (S.D.N.Y. 2003) (applying flat 15% reduction in fees); General Electric Co. v. Compagnie Euralair, S.A., No. 96 Civ. 884, 1997 WL 397627, at *6 (S.D.N.Y. Jul. 3, 1997) (reducing the fee request by fifty percent for, inter alia, excessive and duplicative hours billed); Carrero v. New York City Hous. Auth., 685 F. Supp. 904, 908 (S.D.N.Y. 1988) (stating reductions will be made "where the attorneys essentially duplicated each other's efforts"), aff'd, 890 F.2d 569 (2d Cir. 1989); Libra Bank Ltd. v. Banco Nacional de Costa Rica, 570 F. Supp. 870, 896 (S.D.N.Y. 1983) (reducing the lodestar figure by 20% to account for over-staffing). Given the different aspects of inappropriate billing, I apply a 30% reduction in the attorneys' fees sought from $177,780.00 to $124,446.

Plaintiff seeks $939.25 in costs, including the filing fee and service of process fees. I find that $909.25 for the court filing fee and service of process fees is reasonable. However, plaintiff's request for $30 in docket fees pursuant to 28 U.S.C. § 1923 is unwarranted. The Clerk does not impose any fees for docketing in this district.

Accordingly, defendants must pay $124,446 for attorneys' fees of which $72,040.29 has already been credited leaving a

-22-

balance of $52,405.71, plus $909.25 in costs.

II. <u>Motion for Rents</u>

In New York, it is long established that a mortgage gives the mortgagee only a lien upon the mortgaged premises. <u>See</u> <u>Sullivan v. Rosson</u>, 223 N.Y. 217, 224 (1918). Correspondingly, a mortgage that includes an assignment of rents as additional security does not automatically entitle the mortgagee to the rents and profits. <u>See</u> <u>Prudential Ins. Co. Of Am. V. Liberdar Holding Corp.</u>, 74 F.2d 50, 51-53 (2d Cir. 1934); <u>In re Carmania Corp., N.V.</u>, 154 B.R. 160, 164 (Bankr. S.D.N.Y. 1993); <u>Sullivan</u>, 223 N.Y. at 224; <u>Vecchiarelli v. Garsal Realty, Inc.</u>, 443 N.Y.S.2d 622, 623 (Sup. Ct. 1980). The mortgagee generally has an equitable right to collect rather than automatic legal title to rents upon default. <u>In re Northport Marina Assocs.</u>, 136 B.R. 911, 916-17 (Bankr. E.D.N.Y. 1992); <u>Vecchiarelli</u>, 443 N.Y.S.2d at 624. In the absence of a contract provision to the contrary, after a default, the mortgagee must take some action to assert its rights in order to enforce its security interest in rent. <u>See</u> <u>In re Hines</u>, 88 F.2d 423 (2d Cir. 1937) (mortgagee becomes entitled to rents after taking steps to assert a claim to possession of the premises or the rents thereof); <u>Prudential Ins.</u>, 74 F.2d at 51-52 ("mortgagee must take some steps to perfect his rights"); <u>641 Ave. Of the Americas Ltd. P'ship v. 641 Assocs., Ltd.</u>, 189 B.R. 583 (Bankr. S.D.N.Y. 1995) ("an assignment of rents becomes enforceable when the assignee takes

some affirmative steps to assert his rights, such as appointing a receiver to collect the rents, taking possession of the property, commencing foreclosure proceedings, or seeking an order for sequestration of rents"); In re Pine Lake Village Apartment Co., 17 B.R. 829, 833 (Bankr. S.D.N.Y. 1982); see also Prudential Ins., 74 F.2d at 51-53. Ultimately, the effect of the assignment of rents clause depends on the intention of the parties. See In re Koula Enterps., Ltd., 197 B.R. 753, 756 (Bankr. E.D.N.Y. 1996); Empire State Collateral Co. v. Bay Realty Corp., 232 F. Supp. 330, 335 (E.D.N.Y. 1964); Sullivan, 223 N.Y. at 223. In those cases where a rent assignment clause was held to be self-executing, the courts found that the parties intended to effect an absolute and unqualified assignment from the time of default to take effect as of the date of the mortgage. See, e.g., Federal Home Loan Mortgage Corp. v. Spark Tarrytown, Inc., 822 F. Supp. 137, 139-40 (S.D.N.Y. 1993); Federal Home Loan Mortgage Corp. v. Dutch Lane Assocs., 775 F. Supp. 133, 139 (S.D.N.Y. 1991); see also Sullivan, 223 N.Y. at 223; In re Koula Enterps., 197 B.R. at 756.

Plaintiff argues here that the language of the mortgage "is intended to convey a present assignment of rents which is absolute, unqualified and immediately effective." Pl.'s Mem. at 3. While I agree with the plaintiff's conclusion that it is entitled to the relief requested, the cases relied on by the plaintiff only serve to illustrate the difference between an absolute assignment of rents clause and the conditional clause at

-24-

issue here.

In <u>Dutch Lane Assocs.</u>, the court held that the assignee of a mortgage was entitled to all rents received during the period of default pursuant to an absolute assignment of rents clause. 775 F. Supp. 133. Unlike the mortgage at issue here, in <u>Dutch Lane</u>, the parties specified that the assignment of rents was absolute and not merely for additional security. The mortgage there also provided that the lender was immediately entitled to rents without entering and taking possession of the property by receiver or otherwise.

In the instant case, the parties expressly agreed that the assignment of rents was for additional security and there is no language to suggest that the parties intended for the assignment to be absolute and self-executing. On the contrary, the assignment of rents clause here is conditioned on a default, at which time the lender is entitled to exercise any and all remedies provided under the mortgage or take possession of the premises upon demand and with process of law. The <u>Dutch Lane</u> court distinguished between an absolute assignment and an assignment for additional security: "In those cases, the rents were expressly assigned as additional security only; they were neither absolute nor independent obligations. As a result, they bear no resemblance to the rent provisions in this case." <u>Id.</u> at 140.

Although the assignment of rents clause at issue here is not self-executing, plaintiff has taken the necessary actions to

-25-

assert its rights to possession and to collect the rents.  Upon the defendants' default, plaintiff instituted a foreclosure action, demanded possession of the Premises, took possession of the Premises, informed the tenants that they should pay rent to the plaintiff and moved for an order of the court to take possession of the units and collect the rents.  Plaintiff has submitted a letter dated February 20, 2009 addressed to Rockaway Equities, LLC and copied to Richard Zimmerman, Esq. demanding possession of the premises.  <u>See</u> ct. doc. 44-1.  Although the letter demonstrates that the plaintiff resorted to self-help prior to sending the demand letter, this should not deprive the plaintiff of the right to collect the rents at least as of the date of the motion to take possession and collect the rents. Plaintiff has now attempted to take possession "with process of law" and is thus entitled to do so and collect rents as of August 14, 2009, the date of the instant motion.  <u>See</u> <u>In re Ormond Beach Assocs. Ltd. P'ship</u>, 184 F.3d 143, 154-55 (2d Cir. 1999) (under Florida law, creditor could obtain rents under a collateral assignment after judicial determination in the form of an order of sequestration of rents, foreclosure or appointment of a receiver); <u>In re Loco Realty Corp.</u>, No. 09-11785, 2009 WL 2883050, at *5 (S.D.N.Y. Bankr. June 25, 2009) (same under New York law).

CONCLUSION

For the foregoing reasons, plaintiff's motion for default judgment of foreclosure and sale is granted in the amount of

$3,457,842.87, plus accrued interest on the outstanding principal from June 10, 2010.  I also grant plaintiff's motion for an interim order to take possession of the premises, to require defendants to inform tenants to pay rent to plaintiffs instead of defendants and to require defendants to turnover all rents previously collected from August 14, 2009, the date the motion was filed.

**SO ORDERED.**

Dated:    Brooklyn, New York
          September 23, 2011

                                    _____/s/_____
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE